## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JESSIE GUZMAN, III,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **vs.** ) | **Case No. 3:24-cv-681-NJR** |
| ) | |
| **THOMAS LILLARD,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |
| ) | |
| ) | |
| ) | |

### MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Petitioner Jessie Guzman III is an inmate in the Federal Bureau of Prisons ("BOP"), currently incarcerated at FCI Greenville. He filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the computation of his federal sentence and the BOP's decision to deny him credit for time served in state custody. Specifically, Mr. Guzman claims that the BOP improperly denied him 660 days of prior custody credit for the time he spent in the custody of the State of Texas before his federal sentence commenced. For the reasons set forth below, the habeas petition is denied.

### BACKGROUND

On March 21, 2017, Mr. Guzman was arrested in Taylor County, Texas, and charged with possession of methamphetamine with intent to deliver (Doc. 12–1, pp. 2–3;

*see also id.* at pp. 9, 27–28 (judgment)).[1] It is undisputed that Guzman remained in state custody following his arrest (*see* Doc. 12-1, pp. 3, 9, 17–18; *see also* Docs. 1, 17).

At the time of his arrest, Guzman was on community supervision[2] for a previous conviction for unlawful possession of a firearm in Haskell County, Texas, which the state subsequently sought to revoke (Doc. 12–1, p. 3; *see also id.* at pp. 30–32 (judgment)).[3] Additionally, while the state cases were pending, the federal government brought charges against Guzman for felon in possession of a firearm and ammunition (Doc. 12–1, p. 3; *see also id.* at pp. 11–13 (indictment)).[4]

It is undisputed that on June 20, 2017, Mr. Guzman was transferred to federal authorities pursuant to a writ of habeas corpus ad prosequendum in order to face the federal charges (Doc. 12–1, p. 3; *see also id.* at pp. 15, 17–18; Doc. 17, p. 2). He was sentenced on December 15, 2017, in the federal case to 51 months' imprisonment (*Id.* at pp. 20–23). The judge ordered that the federal sentence was to run consecutive to the anticipated sentence for the probation violation in Haskell County, but concurrent with the anticipated sentence on the new drug charges in Taylor County (*Id.* at p. 21). It is undisputed that following the federal sentencing, Mr. Guzman was returned to Texas

---

[1] *State of Texas v. Guzman*, 104th District Court for Taylor County, Texas, case number 20911B

[2] Community Supervision is the same thing as probation. *E.g., Holcomb v. State,* 146 S.W.3d 723, 732 (Tex. App. 2004).

[3] *State of Texas v. Guzman*, 39th District Court for Haskell County, Texas, case number 6081

[4] *United States v. Guzman*, case number 1:17-CR-00038 (N.D. Tex.)

authorities on January 2, 2018, and the federal criminal judgment was filed as a detainer with the State of Texas (*Id.* at p. 3; *see also id.* at pp. 17–18, 25; Doc. 17, p. 2).

On November 20, 2018, Mr. Guzman was sentenced on the drug charges in Taylor County to 12 years' imprisonment (Doc. 12-1, pp. 3, 27–28). The judgment indicated that he was given 610 days of credit on his sentence for time already served from March 21, 2017 (the date of his arrest) through November 20, 2018 (the date of his sentencing) (*Id.*). Mr. Guzman's probation in Haskell County was then revoked and on January 10, 2019, he was sentenced to seven years' imprisonment, with 663 days of jail time credit, and his sentence was to run concurrent with his Taylor County sentence (*Id.* at pp. 3, 30–32).

Mr. Guzman's state sentences were aggregated and they both ended on February 2, 2023 (Doc. 12–1, pp. 3–4, 60). He was released that day from state custody to the federal detainer (*Id.* at pp. 3–4; *see also id.* at 17–18). When it came to computing Guzman's federal sentence, because his state sentences had ended on the same date, it was impossible for the BOP to run his federal sentence consecutive to the sentence in Haskell County for the probation violation and concurrent to the sentence in Taylor County on the drug charges; a sentence cannot run both concurrent with and consecutive to a single period of imprisonment (*Id.* at p. 4; *see also id.* at pp. 57–58). The BOP calculated Guzman's federal sentence as commencing on February 2, 2023, the date he was released from state prison and handed over to the U.S. Marshals—effectively running his federal sentence consecutive to his state sentences (*Id.* at p. 4). The BOP also determined that Guzman should not receive credit toward his federal sentence for any of the time he spent in custody from the date of his arrest on March 21, 2017, through the date he was released

from state custody on February 2, 2023, because he received credit toward his state sentences for that time (*Id.* at p. 5; *see also id.* at pp. 41–43). Mr. Guzman's current projected release date from federal prison is September 14, 2026 (*Id.* at p. 5; *see also id.* at p. 43).

Mr. Guzman apparently sought a different computation, asking the BOP to give him "credit toward his federal sentence for the time spent in the primary jurisdiction of state authorities" (*see* Doc. 12-1, pp. 57–58). The BOP construed this as a request to calculate his federal sentence as commencing on the date it was imposed, December 15, 2017, and to retroactively designate the Texas correctional facility as the original place of confinement for his federal sentence as of that date (*see id.*). Calculating his sentence in this manner would have the effect of running his federal sentence concurrent with his state sentences. The BOP asked the federal sentencing judge for his opinion on the matter, and the judge responded that Mr. Guzman's "federal sentence, imposed December 15, 2017, is to run *consecutively* to both state terms of imprisonment" (*Id.* at pp. 4, 64) (emphasis added). The BOP thus kept Guzman's sentence calculation as is and his current projected release date from federal prison remains September 14, 2026 (*Id.* at pp. 5, 43).

## DISCUSSION

The Attorney General, acting through the BOP, has the responsibility for administering a federal prisoner's sentence, which includes calculating the prisoner's period of incarceration for the sentence imposed and providing credit for time served. *United States v. Wilson,* 503 U.S. 329, 334–335 (1992). In instances such as Mr. Guzman's, where a prisoner believes the BOP has erred in its calculation of his federal sentence, the prisoner may, after exhausting administrative remedies, challenge the execution of his

sentence by bringing a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *See United States v. Walker*, 917 F.3d 989, 994 (7th Cir. 2019) (*Jake v. Herschberger*, 173 F.3d 1059, 1063 (7th Cir. 1999)). *See also Romandine v. United States*, 206 F.3d 731, 736 (7th Cir. 2000) (requests for sentence credit, or for recalculation of time yet to serve come under § 2241). The writ of habeas corpus will only be granted when the petitioner shows that the BOP's sentencing calculation violates federal law. *See* 28 U.S.C. § 2241(c)(3).

In this instance, Mr. Guzman alleges that he is in custody in violation of 18 U.S.C § 3585 (Doc. 1), which governs the calculation of a term of imprisonment.[5] Specifically, he claims the BOP erred by not following the district court's judgment and running his federal sentence concurrent with the Taylor County sentence, thereby denying him 660 days of prior custody credit—from March 21, 2017, the date of his arrest, through January 9, 2019, one day prior to the revocation of his probation in the Haskell County case—on his federal sentence (Doc. 1, pp. 1–2).

Respondent filed a response in opposition to Guzman's petition, arguing that Guzman did not exhaust his administrative remedies prior to filing his habeas petition,

---

[5] This statute, which is titled, "Calculation of a Term of Imprisonment," provides:
(a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
(b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
    (1) as a result of the offense for which the sentence was imposed; or
    (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
that has not been credited against another sentence.

but even if he had, his claim that his sentence was incorrectly calculated by the BOP is meritless (Doc. 12).

Mr. Guzman then filed a reply brief, reasserting his original argument that he is entitled to prior custody credit on his federal sentence from March 21, 2017, through January 9, 2019, and advancing new arguments likewise aimed at shortening his time in the BOP (Doc. 17). In particular, he argues that the BOP should retroactively designate the state facility as the place he is to serve his federal sentence as of the date the federal sentence was imposed and give him credit for all time in custody prior to the sentence imposition date (Doc. 17, pp. 8–10). Mr. Guzman argues, in the alternative, that if the Court approves of the BOP running his federal sentence consecutive to the state sentences, then he is in custody "in violation of the judgment and the rule of law" and the Court must find that his federal sentence is unreasonable as it is impossible to perform (Doc. 17, pp. 11–13).

The Court turns first to the issue of exhaustion before addressing the merits of Mr. Guzman's claim that his sentence has been improperly calculated. *See Kane v. Zuercher*, 344 Fed. App'x 267, 269 (7th Cir. 2009) ("[A] district court is entitled to require a prisoner to exhaust the administrative remedies that the BOP offers before it will entertain a [§ 2241] petition.") (citing *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997)).

## A. EXHAUSTION OF ADMINISTRATIVE REMEDIES

While there is no statutory exhaustion requirement that applies to § 2241 petitions, the Seventh Circuit has recognized that a common law exhaustion requirement applies. *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). Exhaustion is an affirmative defense

that Respondent has the burden of pleading and proving. *Acosta v. Daniels*, 589 Fed. App'x 870, 873 (10th Cir. 2014) (citing *Garza v. Davis,* 596 F.3d 1198, 1200 (10th Cir. 2010)); *Luedtke v. Berkebile,* 704 F.3d 465, 466 (6th Cir. 2013); *George v. Longley,* 463 Fed. App'x 136, 139 (3d Cir. 2012). *See also, e.g., Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) ("A prisoner's failure to exhaust administrative remedies before filing a claim constitutes an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure.") (*Bivens* suit).

In order to properly exhaust their administrative remedies, an inmate is required to "comply with the BOP's rules governing filing and prosecution of a complaint." *Ihmoud v. Jett*, 272 Fed. App'x 525, 527 (7th Cir. 2008) (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). *See also Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.") (§ 1983 suit). The BOP administrative remedy process is comprised of four tiers (Doc. 12-1, p. 6, para. 17). 28 C.F.R. §§ 542.13–15. The inmate must first attempt to informally resolve the issue with their counselor (BP-8 form), then file a written grievance with the warden (BP-9 form), then appeal to the BOP Regional Director (BP-10 form), and finally appeal to the BOP General Counsel (BP-11 form) (Doc. 1, pp. 9–10, 11–12; *see also* Doc. 12-1, p. 6, para. 17). 28 C.F.R. §§ 542.13–15. An inmate's failure to complete all steps of the administrative remedy process prior to filing a § 2241 petition may be excused if the administrative remedy process was rendered unavailable by prison officials. *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 236 (6th Cir. 2006) ("[A] habeas petitioner's failure to complete the administrative remedy process may be excused where his failure is due to the administrator, rather than the petitioner . . . .").

*See also Schmanke v. Irvins,* 207 Fed. App'x 655, 657 (7th Cir. 2006) (habeas petitioner's failure to exhaust "can be excused only upon a showing of cause and prejudice.") (citing *Sanchez v. Miller,* 792 F.2d 694, 697 (7th Cir. 1986)). *Cf. Ross v. Blake,* 578 U.S. 632, 642, 644 (2016) (explaining that under the PLRA, "[a]n inmate . . . must exhaust *available* remedies," but need not exhaust remedies made unavailable by prison administrators through "machination, misrepresentation, or intimidation.") (§ 1983 case).

According to Mr. Guzman, he tried to make use of the BOP's administrative remedy process but was thwarted. Specifically, he stated in a sworn declaration that he spoke with a Unit Team Member on January 3, 2024, about his sentence calculation (Doc. 1, p. 9). He was issued a BP-8 form, which he filled out that day (*Id.; see also id.* at pp. 11–12). But "when [he] went to hand [it] in," it was "denied verbally through a conversation" (*Id.* at p. 9). Mr. Guzman also stated that "[w]hen [he] attempted to get a BP-9 to file [his] initial complaint, [he] was denied the form" (Doc. 1, p. 9).

In response, Respondent argued that Mr. Guzman did not engage with the administrative remedy process at all, let alone exhaust it, prior to filing the instant petition (Doc. 12, pp 4–6). Respondent pointed to a retrieval report from SENTRY (which is the BOP's electronic database that it uses to track all inmate administrative remedy request submissions), which showed Mr. Guzman had not submitted any administrative remedy requests while incarcerated in the BOP (Doc. 12-1, pp. 5–6, para. 15; *see id.* at p. 62). Notably, however, Respondent made no effort to contend with Mr. Guzman's sworn statements that he was not given a written response to his BP-8 and his request for a BP-9 was refused (*see* Doc. 12, pp. 4–6). Guzman's uncontested sworn statements are enough

to stave off a ruling in Respondent's favor on the issue of exhaustion. *Cf. Hill v. Snyder*, 817 F.3d 1037, 1040 (7th Cir. 2016) (holding in § 1983 suit that "exhaustion is not required when the prison officials responsible for providing grievance forms refuse to give a prisoner the forms necessary to file an administrative grievance."); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (explaining in *Bivens* suit that administrative remedies become "unavailable" when, for example, prison officials do not respond to grievances or refuse to give an inmate the necessary grievance form).

## B. SENTENCE CALCULATION

The Court now turns to the merits of Mr. Guzman's argument that his sentence has been improperly calculated. As previously indicated, the BOP determined that Guzman's sentence commenced on February 2, 2023, the day that he was released from state custody and turned over to federal authorities, and that he was not entitled to any presentence credit because he received credit toward his state sentences for that time. As a result of the BOP's determinations, Guzman's federal sentence is effectively running consecutive to his aggregated state sentence.

Mr. Guzman argues that the BOP should calculate his sentence in a different manner. He continues to insist that the BOP can, and must, abide by the district court's order to run his federal sentence concurrent with the Taylor County sentence and consecutive to the Haskell County sentence (Doc. 1, pp. 1, 4–5; Doc. 17, pp. 6–7). As Mr. Guzman sees it, his federal sentence and the Taylor County sentence "were aggregate or 'one sentence'" and running together up until he was sentenced in Haskell County on January 10, 2019, which "effectively stopped the federal sentence from running" (Doc. 1,

p. 7; *see also id.* at p. 6). In other words, every day in custody prior to January 10, 2019 that counted toward his Taylor County sentence (and there were 660 of them) should also count toward his federal sentence. Mr. Guzman acknowledges, however, that he cannot get credit for those 660 days on his federal sentence if Haskell County also gave him credit for them (*see id.* at pp. 6, 7). While Haskell County gave him 663 days of previous custody credit, Mr. Guzman points out that the judgment does not specify the date range of those days (*Id.*). Therefore, he argues, there is no way to verify, and the BOP just "arbitrarily assumed," those 663 days encompassed the time at issue from his arrest on March 21, 2017, through January 9, 2019 (*Id.; see also id.* at p. 1). He suggests that the 663 days of credit could have been for time served at some point prior to his arrest on March 21, 2017 (*see id.* at pp. 6–7) (acknowledging the Haskell County judgment "does allow a jail credit of 663 days but . . . it is unclear as to when those days were served as the state case is from 5-2-2016").

The Court is unpersuaded by Mr. Guzman's arguments. To begin with, it is beyond dispute that a federal sentence cannot run both concurrent with and consecutive to a single period of imprisonment. While a federal sentencing judge has the authority to order a defendant's federal sentence to run concurrent with one anticipated but not yet imposed state sentence and consecutive to another, *Setser v. United States*, 566 U.S. 231, 236–37 (2012), when the state courts later decide to run both state sentences concurrently, it becomes impossible for the BOP to implement the federal sentence as ordered. *Id.* at 243–44. As the Supreme Court acknowledged, if the federal sentence is added to the state term of imprisonment (*i.e.,* run consecutively), then it will not be concurrent with the new

drug charges, and if the federal sentence is merged in the state term of imprisonment (*i.e.*, run concurrently), then it will not be consecutive to the probation revocation. *Id.* at 244.

Furthermore, Mr. Guzman did not cite to any authority endorsing the computational gymnastics that he advocates using to calculate his sentence (*see* Doc. 1, Doc. 17).[6] Rather, the proper way to calculate a federal sentence is to determine the commencement date of the federal sentence and then the amount of credit a defendant may receive for time spent in custody prior to the commencement of the federal sentence. 18 U.S.C § 3585(a), (b); *Blood v. Bledsoe*, 648 F.3d 203, 207 (3d Cir. 2011).

### 1. Sentence Commencement

Federal statute provides that a sentence "commences on the date the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). "Received in custody" means that the federal government has obtained primary custody (or primary jurisdiction) and physical possession of the defendant. *See Pope v. Perdue*, 889 F.3d 410, 415 (7th Cir. 2018) ("Under the doctrine of primary custody, an inmate's federal sentence may only commence after the government exercises primary jurisdiction over him."); *Johnson v. Gill*, 883 F.3d 756, 764 (9th Cir. 2018) (interpreting "'custody' in § 3585(a) as 'legal custody,' meaning that

---

[6] In fact, his methodology—which would require the BOP to start the clock on the federal sentence for a couple years, then stop the clock for several years, and then re-start it—appears to be prohibited by case law. *See Bintzler v. Gonzales,* 239 Fed. App'x 271, 275 (7th Cir. 2007) (noting "the common law rule that a sentence must be served *continuously* absent some fault of the prisoner") (emphasis added) (citing *Dunne v. Keohane*, 14 F.3d 335, 336 (7th Cir. 1994) ("Punishment on the installment plan is forbidden.")); *Weekes v. Fleming*, 301 F.3d 1175, 1180 (10th Cir. 2002) ("We note the general rule that 'a sentence of five years means a continuous sentence, unless interrupted by . . . some fault of the prisoner, and he cannot be required to serve it in installments.'") (citations omitted).

the federal government has both physical custody of the defendant and the primary jurisdiction necessary to enforce the federal sentence."); *Elwell v. Fisher*, 716 F.3d 477, 481 (8th Cir. 2013) ("Pursuant to the doctrine of primary jurisdiction, service of a federal sentence generally commences when the United States takes primary jurisdiction and a prisoner is presented to serve his federal sentence . . . .").

"In general, the sovereign that first arrests a defendant takes primary custody over him." *Pope*, 889 F.3d at 415 (citations omitted). That sovereign is entitled to have the individual serve the sentence it imposes before he serves a sentence imposed by any other jurisdiction.[7]  A sovereign maintains primary custody until its sentence expires and it releases the inmate, or until it relinquishes its priority through some other act, such as granting bail, dismissing the charges, or releasing the individual on parole. *Pope*, 889 F.3d at 415 (citing *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005)); *Johnson*, 883 F.3d at 765 (citations omitted).

The BOP has incorporated these principles into its governing policies. *See* U.S. DEP'T OF JUSTICE, BOP PROGRAM STATEMENT No. 5880.28, pp. 12–13, 31–33 (1997). In

---

[7] *Johnson*, 883 F.3d at 764–65 ("[T]he arresting sovereign establishes its primary jurisdiction and may give effect to its sentence before other sovereigns may do so."); *Ruff v. Butler*, No. 16-5565, 2017 WL 5135545, at *3 (6th Cir. June 16, 2017) ("[T]he first sovereign to arrest that individual has primary custody, and may insist that he serve his sentence for a conviction from that sovereign before serving any other sentence . . . .") (citing *Ponzi v. Fessenden*, 258 U.S. 254, 260–62 (1922)); *Binford v. United States*, 436 F.3d 1252, 1255 (10th Cir. 2006) ("[T]he sovereign that first acquires custody of a defendant in a criminal case is entitled to custody until it has exhausted its remedy against the defendant.") (citation omitted); Jenny L. Devine, *Sovereign v. Sovereign: Achieving Desired Sentencing Outcomes in Two Dueling Jurisdictions*, CRIM. JUST., Spring 2022, at 11 ("Primary jurisdiction dictates the order of operations for defendants facing multiple cases—and multiple sentences—in a multi-sovereign context. . . . and the primary custodian's sentence is served first.")

pertinent part, the BOP's sentence computation manual instructs that when a defendant is in primary state custody at the time the federal sentence is imposed, and the federal sentence is ordered to run *consecutively* to a state sentence, then the federal sentence does not commence until the defendant satisfies the state sentence and the U.S. Marshals' Service or the BOP gains exclusive custody of the prisoner. *Id.* at p. 32A. On the other hand, if the federal sentence is ordered to run *concurrently* with a state sentence, the BOP implements that order by designating the state facility as the place to serve the federal sentence as of the date the federal sentence was imposed. *Id.* at p. 32A. In other words, the federal sentence commences on the date it was imposed, even though the defendant remains in the primary custody of the state. *See* 18 U.S.C. § 3621(b) (giving the BOP authority to choose the prisoner's place of confinement for their federal sentence and advising that the BOP "may designate any available penal or correctional facility . . . whether maintained by the Federal Government or otherwise"); *Setser*, 566 U.S. at 235 (recognizing that § 3621(b) gives the BOP authority to "order that a prisoner serve his federal sentence in a *state* prison") (emphasis in original); *Short v. Revell*, 152 Fed. App'x 542, 544 (7th Cir. 2005) ("A district court may order a federal sentence to run concurrently with an undischarged state sentence, . . . and if the defendant is still in state custody when the federal sentence is imposed, the BOP can implement the concurrent sentence by designating a state facility as the place of federal confinement.") (citations omitted).[8]

---

[8] The BOP sometimes makes this designation at the time of the federal sentencing while the prisoner is in state custody and other times waits until the prisoner enters federal custody and makes a retroactive designation (also referred to as a nunc pro tunc designation). *Setser*, 566 U.S. at 235 n.1; *Elwell*, 716 F.3d at 486.

Here, Texas obtained primary custody over Mr. Guzman when he was arrested by state authorities on March 21, 2017. Texas maintained primary custody over him even when he was "borrowed" by federal authorities pursuant to a writ of habeas corpus ad prosequendum for the federal proceedings.[9]  Following the federal proceedings, Guzman was returned to Texas authorities and remained in the primary custody of Texas authorities at all times until he satisfied his state sentences. It was only when he was released from state prison to the federal detainer on February 2, 2023, that federal authorities obtained primary jurisdiction over him and he was "received in custody" for the purpose of serving his federal sentence. Therefore, the BOP correctly determined in accordance with its sentence computation manual that Guzman's federal sentence commenced on February 2, 2023. *See Cole,* 416 F.3d at 897 (holding that federal sentence did not begin on the date it was imposed because defendant was still in primary state custody); *United States v. Lemus-Rodriguez,* 495 Fed. App'x 723, 726 (7th Cir. 2012) (same); *Jones v. Winn*, 13 Fed. App'x 419, 421 (7th Cir. 2001) (same).

To the extent that Guzman is asking the BOP to credit time spent in service of his state sentences by running his federal sentence concurrent with the state sentences through a nunc pro tunc designation as of the date the federal sentence was imposed, it

---

[9]  *Loewe v. Cross*, 589 F. App'x 788, 790 (7th Cir. 2014) (citing *Jake*, 173 F.3d at 1062 n.1). *Accord Pope*, 889 F.3d at 412–13 ("Using [a] writ [of habeas corpus ad prosequendum], a sovereign may take temporary custody of a prisoner in the custody of another sovereign, for the purpose of prosecution, without acquiring primary custody."); *Elwell*, 716 F.3d at 482 (explaining that prisoner transferred to the physical custody of federal authorities pursuant to writ of habeas corpus *ad prosequendum* "remained subject to [the state's] primary jurisdiction and was merely and temporarily 'on loan' to the United States") (citation omitted).

is unclear whether Guzman made this request to the BOP through the administrative remedy process before asserting it in this habeas action (*see* Doc. 1, pp. 11–12 (BP-8 form)). Furthermore, Guzman did not make any argument regarding a nunc pro tunc designation until his reply brief, (*see* Docs. 1, 17), and thus Respondent did not have a chance to weigh in and respond. *See Judge v. Quinn*, 612 F.3d 537, 542 (7th Cir. 2010) ("The district court [is] under no obligation to entertain" arguments raised for the first time in a reply brief); *H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 636 (7th Cir. 2020) ("[T]he reply brief is an opportunity to reply, not to say what should have been said in the opening brief.") (citation omitted).[10]

That being said, it appears that the BOP considered the propriety of a nunc pro tunc designation (*see* Doc. 12-1, pp. 57–58). *See Jones v. Winn,* 13 F. App'x 419, 421 (7th Cir. 2001) ("BOP has broad statutory discretion to designate any correctional facility as the place of confinement for service of a federal sentence, and must consider a nunc pro tunc designation request but has no obligation to grant it.") (citing 18 U.S.C. § 3621(b) and *Barden v. Keohane,* 921 F.2d 476, 478 (3rd Cir. 1990)). Specifically, the BOP sent a letter to the sentencing court requesting guidance as to how Guzman's federal sentence should run with respect his state sentences given that they were aggregated and ended on the same date (*Id.*). *See* 18 U.S.C. § 3621 (instructing the BOP to consider a number of factors when choosing what facility to designate as the place of the prisoner's imprisonment,

---

[10] *See also O'Neal v. Reilly,* 961 F.3d 973, 974 (7th Cir. 2020) ("[W]e have repeatedly recognized that district courts are entitled to treat an argument raised for the first time in a reply brief as waived.") (citations omitted).

including "any statement by the court that imposed the sentence."); *see also* U.S. DEP'T OF JUSTICE, BOP PROGRAM STATEMENT No. 5160.05, p. 6 (2003) (instructing that if a designation for concurrent service may be appropriate, prison authorities should send a letter to the sentencing court inquiring as to whether the court has any objections); *Elwell*, 716 F.3d at 486 ("The requirement that the BOP consider the sentencing court's intent is consistent with the Supreme Court's statement in *Setser* that the BOP enjoys discretion but does not enjoy 'sentencing authority.'") (citing *Setser*, 566 U.S. at 239). Here, the sentencing judge advised that the federal sentence should run consecutive to the state sentences (Doc. 12-1, p. 64). The BOP therefore stuck to its original determination that Guzman's federal sentence commenced on February 2, 2023, the date he entered primary federal custody, and opted against commencing his sentence on the date it was imposed through a nunc pro tunc designation. *See* BOP PROGRAM STATEMENT No. 5160.05, p. 4 ("A designation for concurrent service of sentence will be made only when it is consistent with the intent of the federal sentencing court or the goals of the criminal justice system."). Mr. Guzman did not make any argument as to why the BOP's decision amounted to an abuse of discretion (*see* Docs. 1, 17).

In sum, Mr. Guzman was in primary state custody at the time his federal sentence was imposed and the BOP did not agree to designate the state facility for service of the federal sentence, therefore his sentence did not commence until February 2, 2023, when he was released from state custody to the primary custody of federal authorities.

### 2. Sentence Credit

As for prior custody credit, federal prisoners are generally entitled to credit against

their sentences for time spent incarcerated for the offense for which they were imprisoned, or on other arrests "after the commission of the offense for which the sentence was imposed." 18 U.S.C. § 3585(b). But prior custody credit is available only if the time "has not been credited against another sentence." *Id.*; *United States v. Ross*, 219 F.3d 592, 594 (7th Cir. 2000) ("[Section] 3585(b) forbids the BOP from giving credit for presentence custody when that credit has been applied against another sentence."). "Congress made clear that a defendant could not receive a double credit for his detention time." *Wilson,* 503 U.S. at 337.

Here, Mr. Guzman is seeking credit for the 660 days he spent in custody from his arrest on March 21, 2017 up to (but not including) January 10, 2019, when he was sentenced in Haskell County (Doc. 1). The Court finds that the BOP correctly determined he was not entitled to credit for any of the days at issue because the evidence shows that he received credit for these days toward his state sentences in both Taylor and Haskell Counties.

In Taylor County, Mr. Guzman received 610 days of presentence credit for the time he spent in custody between his arrest on March 21, 2017, and his sentencing on November 20, 2018 (Doc. 12-1, p. 27). The time he spent in custody after his sentencing November 20, 2018, up until his sentencing in Haskell County on January 10, 2019, was spent in service of his Taylor County sentence.

Haskell County likewise gave Mr. Guzman credit for the time period at issue; at his sentencing on January 10, 2019, he received 663 days of presentence credit (Doc. 12+1, p. 30). Mr. Guzman's attempts to cast doubt as to whether these 663 days of credit

encompassed the time period at issue are unconvincing. As an initial matter, the Court notes that the Haskell County sentencing judge was not required to list the date ranges for the presentence credit because the judgment form (which was presumably the most up-to-date version of the form given that it had been revised just one month prior to Guzman's sentencing) did not include a place to do so (*see* Doc. 12-1, p. 30). The sentencing judge's only option was to enter the total number of days for which Mr. Guzman was given credit.

Additionally, contrary to Mr. Guzman's contention, the BOP did not "arbitrarily assume" that the 663 days of credit he received toward his Haskell County sentence encompassed the time he spent in custody from his arrest on March 21, 2017, up to the time of his sentencing on January 10, 2019. Rather, that is the period of time Texas law mandates a defendant must receive credit for. *See* TEX. CRIM. PROC. CODE ANN. art. 42.03 § 2(a)(1) ("In all criminal cases the judge of the court in which the defendant is convicted shall give the defendant credit on the defendant's sentence for the time that the defendant has spent . . . in jail for the case . . . from the time of his arrest and confinement until his sentence by the trial court[.]")

While Mr. Guzman suggests that the 663 days of credit could have been for some period of time other than the one at issue, he provided no evidence to support that suggestion (*see* Docs. 1, 17). For example, he did not provide anything from the record in the Haskell County criminal case documenting the period(s) of time that the 663 days of

jail credit covered (*see* Docs. 1, 17).[11] Guzman also did not offer any proof that he ever spent 663 days in custody during some timeframe other than the one at issue, let alone cite to any Texas statute or case law showing that he was entitled to credit against his probation revocation sentence for this hypothetical time period (*see* Docs. 1, 17). Simply put, Mr. Guzman offered nothing besides his own speculation that the 663 days of credit he received from Haskell County did not encompass the time from his arrest up to his sentencing. *See Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (§ 2241 petitioner bears the burden of proving by a preponderance of the evidence that he is being held contrary to law); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("[T]he burden of proof under § 2241 is on the prisoner . . . .").

In sum, the evidence demonstrates that during the 660 days at issue—from March 21, 2017, the date of his arrest, up to (but not including) January 10, 2019, the date of his sentencing in Haskell County—Mr. Guzman was in the primary legal custody of the state of Texas, and he received credit against his state court sentence for that time. Therefore, the BOP is prohibited under § 3585(b) from giving him credit on his federal sentence for that period of time.[12]

---

[11] It is difficult to imagine the Haskell County sentencing judge decreed that Mr. Guzman was entitled to 663 days of presentence credit without some kind of verifying documentation or stipulation by the parties on the record. Perhaps there was some kind of certification or affidavit, a motion by one or both parties, or maybe statements on the record.

[12] The Court notes that even if the BOP had run Guzman's federal sentence concurrent with the state sentences, he would still not be entitled to credit on his federal sentence for all of the 660 days at issue. His federal sentence would begin to run as of the date it was imposed on December 15, 2017, so he would get credit for time spent in custody from that date forward. *See Short v. Revell,* 152 Fed. App'x 542, 544 (7th Cir. 2005). But he would not get credit for time spent in presentence custody prior to that date because he was in the primary legal custody of the state and received credit against his state sentence for that time. *See id. See also Martin v. Warden, Fed. Corr. Inst. - Cumberland*, No. CV DKC-22-3338, 2023 WL 4532823, at *3 (D.

## C. REASONABLENESS OF SENTENCE

Finally, to the extent that Mr. Guzman is arguing that his federal sentence is unreasonable, (Doc. 17, pp. 11–13), he did not raise this argument until his reply brief (*see* Docs. 1, 17), and therefore Respondent had no chance to respond. Additionally, this argument challenges the validity of his sentence, and such a challenge ordinarily must be raised in a § 2255 motion. *Carnine v. United States*, 974 F.2d 924, 927 (7th Cir. 1992) ("Section 2255 is the proper vehicle for collaterally attacking the validity of a . . . sentence. Judicial review pursuant to 28 U.S.C. § 2241, in contrast, provides the appropriate mechanism in a claim concerning the computation of a sentence.") A prisoner may only use § 2241 to attack a sentence in the narrow class of cases that fall within the "savings clause" of § 2255, which permits a prisoner to proceed under § 2241 if § 2255 was "inadequate or ineffective to test the legality of his detention." *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003) (citing 28 U.S.C. § 2255(e)). Guzman provided no explanation as to how he falls within the savings clause (*see* Doc. 17). Consequently, this argument cannot establish grounds for granting relief under § 2241.

## CONCLUSION

In sum, Mr. Guzman has failed to demonstrate that the BOP's calculation of his federal sentence is incorrect and in violation of federal law. In fact, it appears to the Court that the BOP's sentencing calculation fully complies with the law and the BOP's own

---

Md. July 13, 2023) ("[W]hile the federal judge ordered his 120-month federal sentence to run concurrent to those Ohio sentences, that does not mean that he gets credit for all the time he was in custody of the state of Ohio serving those sentences. Rather, it means that, as of the imposition of the federal sentence on May 16, 2017, the federal sentence began to run . . . .").

internal procedures. Guzman's desire to have his sentence calculated in a different manner does not establish grounds for habeas relief under § 2241. Accordingly, the motion pursuant to 28 U.S.C. § 2241 is **DENIED**.

      **IT IS SO ORDERED.**

      **DATED: May 21, 2025**

                    **s/ Mark A. Beatty**
                    **MARK A. BEATTY**
                    **United States Magistrate Judge**

<u>NOTICE</u>

Petitioner is advised that this is a final decision ending this action in this Court. If Plaintiff wishes to contest this decision, he can appeal to the Seventh Circuit by filing a notice of appeal in the district court *within 60 days* of the entry of judgment. FED. R. APP. P. 4(a)(1)(A), (B). This deadline can be briefly extended upon a motion demonstrating excusable neglect or good cause. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 425 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

Petitioner also has the option—prior to filing a notice of appeal—of filing a post-judgment motion under Rule 59(e) or Rule 60 asking the undersigned to reconsider the denial of the habeas petition. Any such motion, so long as it is in proper form and timely filed, will stop the 60-day clock for filing a notice of appeal until the district court has decided the motion. FED. R. APP. P. 4(a); *Robinson v. Sweeny*, 794 F.3d 782, 783 (7th Cir. 2015). To be "proper," the motion must state the grounds for relief from the adverse judgment. *Robinson*, 794 F.3d at 783.[13] To be timely, the motion must be filed within 28 days of the entry of judgment, and that deadline *cannot* be extended. FED. R. APP. P. 4(a)(4)(A)(iv), (vi); FED. R. CIV. P. 59(b); FED. R. CIV. P. 6(b)(2); *Banister v. Davis*, 590 U.S. 504, 507 (2020). Once the motion is ruled on, the 60-day clock to file a notice of appeal will

---

[13] *Accord Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014) (motion will toll time to appeal so long as it contains an identifiable and substantive reason for reconsidering); *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010) (in order to toll time for filing notice of appeal, motion must comply with Rule 7.1(b)(1) and "state with particularity the grounds for seeking the order" and "the relief sought").

begin anew. *Banister*, 590 U.S. at 508 (citing FED. R. APP. P. 4(a)(4)(A)(iv)).

      The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing
fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Petitioner cannot
afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in
forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund
account. FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Petitioner
plans to present on appeal. *Id.*